IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMIR FATIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 16-315-GMS |
| | ) |
| COMMISSIONER ROBERT COUPE, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The plaintiff, Amir Fatir ("Fatir"), an inmate at the James T. Vaughn Correctional Center

("VCC), Smyrna, Delaware, filed this lawsuit on May 3, 2016. (D.I. 1.)  He proceeds *pro se* and

has been granted leave to proceed *in forma pauperis*.  (D.I. 8, 10.)  The court now proceeds to

review and screen the complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

## I.    BACKGROUND

Fatir's five count complaint (*see* D.I. 1; D.I. 19, ¶ 1 describing counts in this action),[1]

filed pursuant to 42 U.S.C. § 1983,[2] alleges violations of the First, Fifth, and Fourteenth

Amendments of the United States Constitution, Delaware Statutes, Delaware Department of

Correction ("DOC") policies and procedures, and the DOC inmate reference manual when

---

[1]The operative complaint consists of classification claims at Counts 1 through 5, against
Robert Coupe, Chris Klein, Warden David Pierce, John Brennan, Richard Porter, Kevin Fletcher,
Perry Phelps, Ronald Hosterman, James Scarborough, Philip Parker, and William Evans. (D.I. 1
at ¶¶ 11, 18, 19, 21, 22-26, 28-30, 33, 47, 64-93, 273-307, 501, 502, 580, 581.)

[2]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him
of a federal right, and that the person who caused the deprivation acted under color of state law.
*West v. Atkins,* 487 U.S. 42, 48 (1988).

certain defendants allegedly refused to: (1) afford Fatir classification procedures to process his requests to be classified to furlough, work release, education release, special home visits, and (2) restore Fatir to the outside/off-grounds employment he achieved and held during the 1990s. (D.I. 1 at ¶¶ 11, 65-93, 273-307.) He seeks injunctive relief and punitive damages. Named as defendants are Robert Coupe ("Coupe"), Chris Klein ("Klein"), David Pierce ("Pierce"), John Brennan ("Brennan"),[3] Richard Porter ("Porter"), Kevin Fletcher ("Fletcher"), Perry Phelps ("Phelps"), Ronald Hosterman ("Hosterman"), James Scarborough ("Scarborough"), Phillip Parker ("Parker"), and William "Bill" Evans ("Evans").

Fatir's background assists in reviewing his claims:

> In 1975, Fatir (formerly known as Sterling Hobbs) was arrested and charged with crimes stemming from an armed robbery and murder which occurred earlier that year. In March 1976, he was found guilty and sentenced to life in prison.[4] [Fatir] was classified to serve his imprisonment at the Delaware Correctional Center ("DCC") (now known as the James T. Vaughn Correctional Center) in Smyrna, Delaware. Although [Fatir] presented a serious disciplinary problem at the beginning of his incarceration, by 1987 he had become a model prisoner. He became an active participant in positive aspects of prison life. He even began new programs designed to help prisoners cope with life behind bars. Fatir also became an author and sought after lecturer on prison life. . . . Fatir was deemed to be a low security risk and was permitted to work in the prison's central supply as a clerk and computer programmer. On April 6, 1995, Fatir filed a complaint against [prison officials].

*See Fatir v. Dowdy*, 2002 WL 2018824, at *2.

In the summer of 1996, Fatir was transferred to an Arizona prison pursuant to the Interstate Corrections Compact, 11 Del. C. §§ 6570-6573, *see Fatir v. Thomas*, 106 F. Supp. 2d

---

[3]Also spelled as "Brenan".

[4]Fatir was originally sentenced to death, but due to the constitutional infirmity of the Delaware death penalty statute, this sentence was later reduced to life without parole. *See Fatir v. Dowdy*, 2002 WL 2018824, at *2 n.2 (D. Del. 2002).

572, 575 n.1 (D. Del. 2000), where he remained until the latter part of 2004 when he returned to

Delaware, was housed at the DCC, placed in the Security Housing Unit, and later transferred to

the Medium-High Housing Unit, *see Boyer v. Taylor*, 2007 WL 2049905, at *6 (D. Del. 2007).

On or about September 8, 2015, Fatir had his annual classification hearing before the

Multi-Disciplinary Team ("MDT") comprised of Porter and Fletcher. (D.I. 1, ¶¶ 71, 274.) Fatir

alleges that it is the "duty" of the MDT to record whatever classification requests the prisoner

makes and then to vote to recommend or not recommend those requests. (D.I. 1, ¶ 65.) Fatir

requested that the MDT classification committee consider recommending returning him to the

classification for outside/off grounds work status, and to consider recommending him for

furlough, work release, education release, and special visit programs. (*Id*. at ¶¶ 71, 72, 275.)

Fatir alleges that Porter and Fletcher "promised" they would record Fatir's requests and forward

the MDT's recommendation.[5] (*Id*. at ¶¶ 72, 277.) Fatir alleges that Porter stated that the

programs Fatir requested "were still on the books" and "they should never have stopped using

them because they worked." (*Id*. at ¶¶ 72, 276.) Fatir alleges that "Porter did not put his requests

into the record and failed (at least on the record) to vote whether or not to recommend [Fatir] for

the programs to which [he had] asked to be classified." (*Id*. at ¶¶ 73, 279.)

Later, Fatir received "official notice" of various approvals from the IBCC, but none of the

foregoing requests were listed as approved or disapproved. (*Id*. at ¶ 74.) It was at this point that

Fatir realized the MDT had neglected to process his requests. (*Id*.) Fatir appealed to Warden

---

[5]The MDT's recommendations are forwarded to the Institution Based Classification
Committee ("IBCC") who forwards the recommendation to the Central Institutional
Classification Committee ("CICC"). (D.I. 1, ¶ 67.)

Pierce, and he also filed a grievance. (*Id.* at ¶¶ 75, 81.)  The grievance was returned "not processed" by Cpl. Matthew Dutton ("Dutton").[6]  (*Id.* at ¶ 285.)

Pierce forwarded Fatir's appeal to classification officer Stacey Hollis ("Hollis")[7] who told Fatir to discuss his requests with his unit counselor to come up with a consensus before his MDT. (*Id.* at 75, 283.)  Fatir alleges that the suggestion amounts to a year's denial since he will not be classified until a year later, he had already taken the steps Hollis suggested, and there is no obligation for a prisoner to "come up with a consensus." (*Id.* at ¶ 76, 281.)  Hollis also told Fatir that the only classifications that could be appealed were those that increased a prisoner's security level. (*Id.* at ¶¶ 78, 283.)  Fatir wrote to Hollis on October 9, 2015, and advised her that he had raised the issues of outside/off-grounds, work release, furlough, and education release with Porter and Fletcher. (*Id.* at ¶ 80.)  When Fatir spoke to Hollis in early October, she told him that she had referred the matter back to Pierce. (*Id.* at ¶ 286.)  Fatir alleges that a few days later he saw Porter who told him that he did not write down the requests because "we don't give out those things anymore." (*Id.* at ¶ 287.)

Fatir alleges that he is legally eligible for furloughs and has a right to be considered for that classification, and he is eligible for consideration of the work release program and education release. (*Id.* at ¶¶ 91-93.)  Fatir alleges that he fulfilled the requirements at step one of the classification process by making his requests, and that the defendants violated his right to due process by failing to vote to recommend or not recommend his requests and then forward the recommendation to the next board. (*Id.* at ¶¶ 77, 280, 282, 288, 290, 297, 299, 302, 305.)  He

---

[6]Not a named defendant.

[7]Not a named defendant.

4

also alleges that when he was classified to, and placed in, the DOC's gradual phasing program in 1985, he had an expectation and implied contractual agreement with the DOC and, by now, he should be enjoying the "fruits of the agreement." (*Id*. at ¶¶ 82-88.)

## II.   STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Fatir proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g.*, *Deutsch v. United States*, 67

F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Fatir leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, ___U.S.___, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir.

6

2016) (internal citations and quotations omitted).  Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   DISCUSSION

### A.   Personal Involvement/Respondeat Superior

Counts 1 through 5 contain conclusory paragraphs that Coupe, Klein, Brennan, Phelps, Hosterman, Scarborough, Parker, and Evans "are responsible for the violations" in each count. (*See* D.I. 1 at ¶¶ 289, 295, 300, 304, 307.)  While the complaint contains allegations against "defendants," it does not contain any allegations specific to any of the foregoing defendants. Indeed, they are only mentioned in the section describing defendants and only in the conclusory sentence of each count.

It may be that some, if not all of the defendants, have been named based upon their supervisory positions.  It is well established that claims based solely on the theory of respondeat superior or supervisor liability are facially deficient.  *See Iqbal*, 556 U.S. at 676-77; *see also Solan v. Ranck*, 326 F. App'x 97, 100-01 (3d Cir. 2009) (unpublished) (holding that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").  A plaintiff must allege "personal direction" or "actual knowledge and acquiescence." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

7

Here, the complaint does not allege any direct or personal involvement by Coupe, Klein, Brennan, Phelps, Hosterman, Scarborough, Parker, and Evans. *See e.g.*, *Mitchell v. Beard*, 492 F. App'x 230 (3d Cir. 2012) (unpublished). Therefore, the court will dismiss the claims against them as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

**B.     Classification**

Fatir alleges that the defendants did not follow the correct classification procedures which resulted in his requests not being considered, that he had no right to appeal, and that his grievance was returned as "not processed." Fatir alleges that the actions of the defendants violated his liberty interest in the classification process.

Initially, the court notes that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Moreover, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

It has thus been determined that the transfer of a prisoner from one classification is unprotected by the Due Process Clause even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Brown v. Cunningham*, 730 F. Supp. 612 (D. Del. 1990) (plaintiff's transfer from general population to

8

administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest).

In his complaint, Fatir relies upon *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980) to support his claims. In *Winsett*, the Third Circuit reviewed whether a Delaware inmate had a liberty interest with respect to a work release program and held that Delaware, by promulgating specific standards for the administration of its work release program had created a protectible liberty interest in participation by inmates who had met those criteria. *Id*. at 1006-07. However, Fatir's reliance is inapposite because, in 2014, the Third Circuit noted that *Winsett* and its progeny are no longer good law, recognizing that *Sandin v. Connor*, 515 U.S. 472 (1995), "announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interested that is protected by procedural due process guarantees." *Powell v. Weiss*, 757 F.3d 338, 345 (3d Cir. 2014) (quoting *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)).

Under *Sandin*, a plaintiff's due process rights are triggered by a deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law." *Id.* Fatir has not articulated a protected liberty interest with respect to consideration of outside/off-grounds employment. Fatir does not complain that his current conditions impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Instead, he seeks greater freedom in the form of classifications that permits outside/off-grounds employment, furlough, educational release, work release, and escorted home visits.

9

In Count 1, Fatir specifically points to his "'liberty interest' . . . including his right to be considered for requests made at the MDT level for outside/off-grounds employment." In Count 4, he seeks work release classification. Prisoners have no entitlement to a specific job, or even to any job. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989). Indeed, an inmate has no constitutional right to work opportunities. *Turner v. Coupe*, ___ F. App'x___, 2016 WL 3553260, at *2 (3d Cir. 2016) (unpublished) (citing *Women Prisoners of D.C. Dep't of Corr. v. D.C.*, 93 F.3d 910, 917 (D.C. Cir. 1996)). In addition, work release status would merely be considered a change in custody status, to which no constitutional right attached. *See Lott v. Arroyo*, 785 F. Supp. 508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program).

As to Count 2, inmates do not have a constitutional right to be furloughed. *See Spuck v. Ridge*, 347 F. App'x 727, 730 (3d Cir. 2009) (unpublished) (citing *Bowser v. Vose*, 968 F.2d 105, 106-07 (1st Cir. 1992) ("It is clear that the denial of a furlough implicates no inherent liberty interest"). The failure to consider Fatir's request for a furlough classification does not implicate any protected liberty interest.

In Count 3, Fatir seeks an educational release classification, but similar to Count 2, prisoners have no constitutional right to an education. *See Flanyak v. Ross*, 153 F. App'x 810, 812 (3d Cir. 2005) (unpublished). Therefore, the failure to consider Fatir's request for an educational release classification does not implicate any protected liberty interest.

Count 5 seeks classification for outside the institution special visits. While Delaware law allows a temporary release of inmates under certain conditions (*e.g.*, death of a family member or

interview of an inmate by a prospective employer), it does not create a right for prisoners to claim entitlement go outside the walls for a "special visit." *See Butler v. Snyder*, 106 F. Supp. 2d 589, 594-95 (D. Del. 2000 (inmate failed to identify a protected property or liberty interest implicating due process concerns in seeking pre-burial ceremony); *see also Wivell v. Adams Cnty. Adult Corr. Facility*, 2007 WL 2155726 (M.D. Pa. 2007).

Finally, to the extent Fatir complains of the grievance process, while the filing of prison grievances is a constitutional protected activity, *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished), the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Fatir is free to bring a civil rights claim in District Court, just as he has. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (unpublished) (citing *Flick v. Alba*, 932 F.2d at 729).

For the reasons discussed, the court will dismiss the complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## C.      Supplemental Jurisdiction

Because the complaint fails to state a federal claim, the court declines to exercise jurisdiction over Fatir's supplemental state law claims. *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

11

## IV.    CONCLUSION

For the above reasons, the court will:  (1) dismiss the complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1); and (2) decline to exercise jurisdiction over any supplemental state claims.  Amendment of the complaint would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d at 111; *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976).

An appropriate order will be entered.

UNITED STATES DISTRICT JUDGE

Oct 25, 2016
Wilmington, Delaware